UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MAMHOUD MOHAMED ABDALLA MOHAMED, | ) | |
| Petitioner, | ) | |
| v. | ) | No. 2:26-cv-00503-MPB-MJD |
| MARKWAYNE MULLIN Secretary, U.S. Department of Homeland Security, *et al.*, | ) | |
| Respondents. | ) | |

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Mahmoud Abdalla Mohamed's petition for a writ of habeas corpus seeks his release from the Clay County Jail, where he is detained at the direction of federal immigration officials. For the following reasons, the petition is granted in part.

**I. Facts**

Petitioner is a citizen and native of Sudan. Dkt. 11-1 at 1. He entered the United States without inspection in 2023 and was apprehended by Border Patrol agents near San Ysidro, California. *Id.* at 13. The government initiated a removal proceeding but did not detain Petitioner during those proceedings. *Id.* at 1.

According to ICE records, the government issued an order of release on recognizance (OREC), permitting Petitioner to enter the United States and live free from detention during his removal proceeding. *Id.* at 13. The OREC itself is not in the record.

On October 24, 2025, an immigration judge ordered Petitioner removed from the United States, denied his asylum claim, and granted his petition for withholding of removal to Sudan. *Id.*

at 4–7. The parties agree that the removal order became administratively final 30 days later. Dkt. 1 ¶ 3; dkt. 11 at 2.

No evidence indicates that Petitioner was placed in detention after his removal order became administratively final. Additionally, no evidence indicates that ICE made any determination regarding whether Petitioner should be detained after the 90-day removal period ended.

Petitioner—subject to a final removal order, but free from detention—was involved in a traffic accident on July 5, 2026. Dkt. 11-1 at 12. Indiana State Police responded to the accident, reviewed Petitioner's identification, and contacted ICE. *Id.* ICE issued an administrative warrant "command[ing]" that Petitioner be taken into federal custody pursuant to 8 U.S.C. § 1226. *Id.* at 9. On July 6, AFOD J.P. Raven issued a memorandum purporting to revoke Petitioner's OREC. *Id.* at 8. The memorandum does not state the basis for revocation. It refers to "the reasons stated in Form I-213," *id.*, which does not refer at all to revocation of the OREC. *Id.* at 11–14.

Respondents have notified the Court that the government has made arrangements to remove Petitioner to Burundi and expects to do so on September 24, 2026. Dkt. 13-1 ¶¶ 5–7. Petitioner responds that he has legal bases to oppose removal to Burundi and that he cannot be removed there lawfully in the reasonably foreseeable future.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner argues that his detention violates the Fifth Amendment's due process clause, the Immigration and Nationality Act (INA), the Administrative Procedure Act (APA), the closely related *Accardi* doctrine, and the Foreign Affairs Reform and Restructuring Act (FARRA).

**A. INA, *Zadvydas*, and FARRA**

Because Petitioner is subject to a final removal order, his detention is governed by 8 U.S.C. § 1231. The statute applies two detention schemes—one compulsory and one discretionary—to two distinct time periods.

Section 1231(a)(1) establishes a 90-day "removal period." For purposes of this case, the removal period begins when the noncitizen's removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Section 1231(a)(1)(A) directs that "the Attorney General shall remove" a noncitizen who has been ordered removed during the 90-day removal period. To facilitate that removal, § 1231(a)(2)(A) directs that the Attorney General "shall detain" the noncitizen during the removal period. If the Attorney General does not remove the noncitizen within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added).

At face value, the text of § 1231(a)(6) authorizes the government to detain noncitizens who are subject to removal orders in perpetuity. But a "statute permitting indefinite detention of an alien," the Supreme Court wrote in *Zadvydas*, "would raise a serious constitutional problem." 533 U.S. at 690. This is because civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

The *Zadvydas* Court reconciled § 1231(a)(6) with the Fifth Amendment by interpreting § 1231(a)(6) as containing an implicit, constitutional limit on post-removal period detention authority. The statute grants the Attorney General authority to detain aliens for the express purpose of facilitating their removal. 533 U.S. at 697. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Likewise, if

detention "exceeds a period reasonably necessary to secure removal," then continued detention is no longer authorized by statute." *Id.* at 699–700.

To aid courts in determining when removal is reasonably foreseeable, *Zadvydas* recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Petitioner's continued detention is lawful under § 1231 as interpreted by *Zadvydas*. Petitioner has been detained for fewer than three months, so his detention is presumptively reasonable. Moreover, Respondents report that they have made arrangements to remove Petitioner to Burundi within the next week. There is no basis for the Court to find that Petitioner is not significantly likely to be removed in the reasonably foreseeable future.

To the extent Petitioner asserts that his detention violates the due process clause, it fails for similar reasons. Practically, a § 1231 detainee's statutory and constitutional claims merge into one because "the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024); *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("Because the *Zadvydas* Court set forth this 'reasonable foreseeability' test in order to prevent § 241 from violating the Due Process Clause, we may safely assume that this test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights. Under *Zadvydas*, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause."). In short, there is no need for a separate due process analysis.

Petitioner's contention that he cannot be lawfully removed to Burundi is beyond the scope of this Court's review. A prisoner who seeks relief other than release from custody may have viable claims, but they may not be presented in a habeas corpus action. *Bunn v. Conley*, 309 F.3d 1002, 1007 (7th Cir. 2002). Further, under 8 U.S.C. § 1252(g), this Court may not hear claims based on decisions to "execute removal orders against any alien." *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention, but respondent invokes the writ to achieve an entirely different end, namely, to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this country."). Petitioner is subject to a final removal order, and Respondents have demonstrated that they intend to execute it in a matter of days. If Petitioner wishes to challenge the legality of his removal to Burundi, he must do so in an immigration proceeding, not a habeas corpus case. For this reason, Petitioner's claim that his removal would violate FARRA is also beyond this Court's habeas review.

**B. APA and *Accardi***

The APA requires federal courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). Respondents do not dispute Petitioner's contention that the decision to detain him is an agency action subject to review under the APA. "[T]he arbitrary and capricious standard requires an agency to do its homework; decisions that overlook relevant record evidence or lack a satisfactory answer do not pass muster." *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024).

Meanwhile, the doctrine of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), teaches "that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's

discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021). "[I]t is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). The core of *Accardi* is that the government may not "fail[] to exercise its own discretion" when valid regulations require it to do so. 347 U.S. at 268.

Since Petitioner's removal order became administratively final, the government has not done its homework. It has not followed its own procedures or clearly explained why it has not followed its own procedures.

Petitioner's OREC does not appear in the record, but the Court assumes for the sake of argument that Petitioner was released pursuant to an OREC in 2023. Dkt. 11-1 at 13. Respondents acknowledge that an OREC "is regulated by 8 C.F.R. § 1236.1(c)(9) and is a release mechanism used before a removal order is entered." Dkt. 11 at 2.

The government issued a removal order in October 2025, and it became administratively final a month later. By law, Petitioner was subject to mandatory detention for the 90-day removal period immediately following administrative finality of the removal order. 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). The government acknowledges that Petitioner was not detained during the removal period but does not explain why.

When the removal period ended in February 2026, Petitioner remained free from detention. A different set of regulations—8 C.F.R. §§ 241.4 and 241.13—governs post-removal period detention. *See, e.g.*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (identifying § 241.4 as "setting out procedures DHS must follow to impose continued detention"); *Nosirov v. Gantt*, No.

CIV-26-1036-J, 2026 WL 2151159, at *5 (W.D. Okla. July 27, 2026)[1] (Sections 241.4 and 241.13 "govern detention of noncitizens subject to a final order of removal and beyond the removal period."); *Perez Vilchez v. Noem*, No. 2:26-CV-391-KCD-DNF, 2026 WL 1090983, at *5 (M.D. Fla. Apr. 22, 2026) (Sections 241.4 and 241.13 "dictate how the government handles noncitizens who already have a final order of removal.").

The government did not engage in the regulatory process governing post-removal period detention. Section 241.4 sets out processes for determining whether or not to release a detainee, notifying the detainee of that determination, and—as should be relevant here—revoking release. The government did not make any of these determinations or issue any of these notices in Petitioner's case because, contrary to law, Petitioner was not detained during the removal period.

When the government re-detained Petitioner, it did not engage in the revocation process at § 241.4(*l*)(2). Instead, the government issued an administrative warrant indicating Petitioner was being arrested under 8 U.S.C. § 1226 for a removal proceeding—never mind that Petitioner was already subject to a final removal order. Dkt. 11-1 at 9. Additionally, the government purported to revoke Petitioner's OREC. *Id.* at 8. As Respondents recognize, however, an OREC governs pre-removal order release from detention. Dkt. 11 at 2. When Petitioner was ordered removed, he was, by law, subject to mandatory detention for 90 days; afterward, any release must have been governed by § 241.4.

This sequence of events and Respondents' attempt to defend it show that the government has abandoned its own regulations and lead to the conclusion that Petitioner's current detention is arbitrary and capricious. When Petitioner's removal period began, the government was required to detain him. When the removal period ended, the government was required to make a determination

[1] Report and recommendation adopted 2026 WL 2255073 (W.D. Okla. Aug. 5, 2026).

about whether his detention should continue. It did neither. As a result, when Petitioner encountered immigration officials after his traffic accident, the legal basis for his release was unclear. Immigration officials determined—incorrectly—that he could be detained under a regulation that governs detention *during* a removal proceeding. They purported to revoke an OREC that could no longer be in effect because Petitioner was already subject to a final removal order. They deprived Petitioner of § 241.4(*l*)'s release revocation procedure, which should apply to post-removal-order redetention. And, in this Court, Respondents are unable to coherently articulate what authorities governed Petitioner's detention and release for the last nine months.

The government did not "do its homework" during or after the removal period, and it has not assembled a "satisfactory answer" for its failure to proceed according to its own rules. *Smith*, 103 F.4th at 1252. Under these circumstances, Petitioner's continued detention is arbitrary and capricious and violates the APA and *Accardi*.

"If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). Respondents must afford him the process due to a post-removal-period detainee, and his detention is contrary to law to the extent they have not done so. Because Petitioner's detention is otherwise lawful under § 1231 and *Zadvydas*, and because his removal appears to be imminent, the Court will not order Petitioner's immediate release. However, the Court will require Respondents to afford Petitioner the process he was owed.

## III. Conclusion

The petition for a writ of habeas corpus is **granted**. Respondents will have **through September 24, 2026**, to file documentation that (1) they have taken all necessary steps to revoke Petitioner's release according to the procedures at 8 C.F.R. § 241.4(*l*), (2) Petitioner has been

lawfully removed from the United States, or (3) he has been released from detention subject to the conditions of supervision previously in place under his OREC. This order does not deprive Petitioner of any right to oppose his removal through the appropriate channels or relieve the government of any obligation to hear such challenges.

The petition is otherwise **denied**.

The **clerk is directed** to enter **final judgment**.

With the issuance of this order and the entry of final judgment, this habeas action is no longer pending, and the Court's prohibition against transferring Petitioner ceases to be in effect. *See* dkt. 7 ¶ 4. Therefore, Respondents' motion to dissolve that order, dkt. [13], is **denied as moot**.

**IT IS SO ORDERED.**

Dated: September 21, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Kristin A. Hoffman
Gresk & Singleton
khoffman@gslawindy.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov